UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENDY PETKA,<br><br>       Petitioner,<br><br>   v.<br><br>MYLAN PHARMACEUTICALS, INC.,<br><br>       Respondent. | Case No. 16-mc-80196-MEJ<br><br>**ORDER RE: MOTION TO QUASH SUBPOENA FOR DEPOSITION OF A NON-PARTY**<br><br>Re: Dkt. No. 1 |

## INTRODUCTION

Pending before the Court is non-party Petitioner Wendy Petka's ("Petitioner") Motion to Quash Respondent Mylan Pharmaceuticals' ("Mylan") subpoenas for her deposition pursuant to Federal Rule of Civil Procedure ("Rule") 45.  Mot., Dkt. No. 1.  Mylan filed an Opposition (Dkt. No. 22[1]), and Petitioner filed a Reply (Dkt. No. 17).  Having considered Petitioner's arguments and evidence, Mylan's response, and the relevant legal authority, the Court GRANTS Petitioner's Motion for the following reasons.

## BACKGROUND

Mylan is a defendant in an action pending in the District Court for New Jersey: *Boehringer Ingelheim Pharma GmbH & Co. KG, et al., v. Teva Pharmaceuticals USA, Inc., et al.*, Case No.

---

[1] Mylan filed two separate administrative motions to seal, which seek to seal, among other things, portions of Mylan's Opposition brief.  *See* Admin. Mots., Dkt. Nos. 15 & 21.  Petitioner has not objected to Mylan's requests to seal, and the Court has separately granted Mylan's requests.  As Mylan's second request contains the most updated information, the Court refers to documents in that request, including the final version of Mylan's redacted Opposition (which is not substantively different from the initial version filed with the Court at Dkt. No. 15-5, 16; *see also* Dkt. No. 21-5 (another redacted version of the Opposition).  An unredacted version is located at Dkt. No. 21-4, as well as Dkt. No. 15-4.

14-7811-MLC-TJB (D.N.J.) (consolidated) ("the New Jersey action"). Mot. at 1. In the New Jersey action, Boehringer Ingelheim Pharma GmbH & Co. KG, Boehringer Ingelheim International GmbH, and Boehringer Ingelheim Pharmaceuticals, Inc. (collectively "Boehringer") sued several generic drug manufacturers, including Mylan, for infringing Boehringer's patent, U.S. Patent No. 6,087,380 ("the '380 patent"), covering, "*inter alia*, the active ingredient" in its drug PRADAXA. Mot. at 1-2; Opp'n at 1. Although Petitioner now serves as Senior Director and Senior Patent Counsel at Theravance Biopharma US, Inc., she was formerly an attorney with Boehringer and was involved in the submission of its Patent Term Extension ("PTE") Application for this patent in 2010. Mot. at 1, 5; Opp'n at 2-4, 6-7. Petitioner is not a party to the New Jersey action. Mot. at 1-2, 12.

On August 19, 1016, Mylan served Petitioner with a Rule 45 subpoena for her deposition to be taken on September 2, 2016 in San Francisco, California, where Petitioner currently resides. Decker Decl., Ex. A (subpoena). The subpoena provides a list of topics to be addressed during the deposition, including "[t]he preparation, filing, and prosecution of the '380 patent"; "[t]he preparation and filing of the December 13, 2010 Application for Extension of Patent Term Under 35 U.S.C. § 156"; and "[d]ata and information relied upon to serve as the basis for the statements made in the December 13, 2010 Application for Extension of Patent Term Under 35 U.S.C. § 156, including but not limited to all facts, data, results, testing, experimental conditions, and/or protocols." *Id*. On August 22, 2016, Mylan served Petitioner with a second subpoena for her deposition on September 2, 2016 in San Francisco, California, but this subpoena did not supply a list of topics to be addressed during the deposition. Decker Decl., Ex. L (subpoena).

Petitioner filed this Motion to Quash after Petitioner and Mylan's counsels met and conferred regarding the basis for Mylan's subpoenas. Mot. at 5, Decker Decl., Ex. M (email exchange discussing phone calls). She contends Mylan seeks information from her which is (1) irrelevant to the current claims and defenses in the New Jersey action; (2) privileged as it relates to her work as Boehringer's attorney; (3) cumulative to information already available through discovery in the New Jersey action and in the public record; and (4) burdensome. *See* Mot. She points out that the New Jersey court scheduled discovery to close in October 2016, and the

deadline for amending the pleadings is October 13, 2015. *Id.* at 1.

For its part, Mylan argues Petitioner has relevant information about several affirmative defenses, including "noninfringement, prosecution history estoppel, and invalidity." Opp'n at 6. Specifically, it contends "Dr. Petka's testimony is directly relevant to Mylan's claim that the PTE is invalid under 35 U.S.C. § 282(c) as well as Mylan's counterclaim of declaratory judgment of invalid PTE for Boehringer's material failure to identify a single claim of the '380 patent that claims Pradaxa." *Id.* at 6-7. It notes that "on September 23, 2016, Mylan moved for leave to amend its answer in the New Jersey Action to include an affirmative defense of invalid PTE under 35 U.S.C. § 282(c) and a counterclaim of declaratory judgment of invalid PTE for Boehringer's material failure to identify a single claim of the '380 patent that claims Pradaxa." *Id.* at 4; Phillips Decl., Ex. 7 ("Mot. to Amend" in New Jersey Action), Dkt. No. 22-2. Mylan further explains that "it seeks to depose Dr. Petka [] to determine whether an allegation of inequitable conduct is appropriate." *Id.* at 8. Although Mylan acknowledges it has not asserted an inequitable conduct defense in the New Jersey action, it contends "it is necessary for Mylan to first depose Dr. Petka to satisfy its Rule 9(b) and Rule 11 obligations prior to amending its answer in the New Jersey Action to include an inequitable conduct allegation." *Id.* at 9. It disagrees that the information it seeks is protected by the attorney client privilege, cumulative to other discovery, or burdensome. *Id.* at 10-14.

On Reply, Petitioner challenges the relevance of the information Mylan seeks. She points out that "Mylan does not dispute that the claims and defenses in the New Jersey action do ***not*** include an inequitable conduct defense" (Reply at 1, emphasis in original) and further that "Mylan fails to disclose that neither Mylan's claim nor counterclaim [related to noninfringement and invalidity] has actually been pled and is not currently part of the New Jersey action" (*id.* at 4-5). Petitioner notes that Mylan only filed a motion for leave to amend its answer after issuing these subpoenas, and the motion (which Boehringer opposes), has not yet been decided. *Id.* at 5. She points out that "*Markman* discovery is undisputedly closed pursuant to the New Jersey action scheduling order[.]" *Id.* at 7.

//

3

## LEGAL STANDARD

The scope of discovery under Rule 45 is the same as that permitted under Rule 26. Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970) ("[T]he scope of discovery through a subpoena is the same as that applicable to . . . other discovery rules"). Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Rule 45 permits parties in a suit to subpoena non-parties in order to obtain discovery. Fed. R. Civ. P 45(c). However, under Rule 45, a court must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A).

"The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Lemberg Law LLC v. Hussin*, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016) (quotation omitted); *see United States v. C.B.S., Inc.*, 666 F.2d 364, 371-72 (9th Cir. 1982) ("Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party"). A court must "limit the discovery sought if it is unreasonably duplicative, if it can be obtained from a source that is more convenient or less burdensome, or if the burden of producing it outweighs its likely benefit." *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (citing Fed. R. Civ. P. 26(b)(2)(C)).

## ANALYSIS

Having reviewed the parties' briefs and supporting materials, the Court finds Mylan has not adequately demonstrated that the information it seeks is relevant to its *current* claims and defenses in the New Jersey action, and as such, the Court finds it most prudent to await the New Jersey court's ruling on Mylan's Motion to Amend before permitting this discovery.

The Court notes that Mylan's Motion to Amend is made pursuant to Federal Rule of Civil Procedure 16(b) as it is asking the New Jersey court to amend after that court set a scheduling

4

order in the New Jersey action. *See* Mot. to Amend at 5-6. The New Jersey court must thus determine whether Mylan has shown good cause to alter the scheduling order. *Id.* Additionally, Mylan has raised arguments similar to the ones raised before this Court as to why it should be given leave to add these claims and defenses. The New Jersey court is in a better position to determine whether the support for Mylan's proposed claims and defenses is sufficient to warrant further litigation related to those issues. Otherwise, Mylan has not shown how the current claims and defenses at issue in the New Jersey action support their subpoenas to Petitioner. *See Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 383 (D.D.C. 2011) (quashing subpoena to depose counsel for information relating to a defense that was not part of the pleadings); *ResQNet.com, Inc. v. Lansa, Inc.*, 2004 WL 1627170, at *4-5 (S.D.N.Y. July 21, 2004) (same).

Mylan's citation to *The Board of Trustees of Leland Stanford Junior University v. Roche Molecular Systems, Inc. (Stanford)*, 2008 WL 624771 (N.D. Cal. Mar. 4, 2008) does not support a different conclusion. Mylan emphasizes that in *Stanford* "the party immediately moved to amend its answer to include the defense of inequitable conduct after it deposed the two individuals accused of inequitable conduct." Opp'n at 9 (citing *Stanford*, 2008 WL 624771, at *7). It cites this portion of the *Stanford* decision:

> Despite the availability of this documentary evidence, it was reasonable-indeed, perhaps necessary-for [the party alleging inequitable conduct] to wait until after obtaining corroborating deposition testimony before attempting to amend its answer. Pleading inequitable conduct prior to obtaining witness testimony could have led [the party alleging inequitable conduct] to be in violation of Federal Rules of Civil Procedure 9(b) and 11.

*Id.* (citing *Stanford*, 2008 WL 624771, at *7; brackets and insertions added by Mylan). But as Petitioner points out, *Stanford* "dealt with the defendant actually seeking leave to amend to add an inequitable conduct defense, and the court merely found that waiting until after deposition testimony in the circumstances of that case was not undue delay under Rule 15 and met good cause under Rule 16(b)." Reply at 3 (citing *Stanford*, 2008 WL 624771, at *7 & n.7). The Court agrees. *Stanford* does not confirm that a party is necessarily entitled to such discovery in advance of a determination on a motion to amend.

5

...
...

Finally, it is likely that much of the information Mylan seeks from Petitioner is at least partially protected by attorney-client privilege and work-product protection. While there is no prohibition on counsel in situations similar to this one, *see Games2U, Inc. v. Game Truck Licensing, LLC*, 2013 WL 4046655, at *7-8 (D. Ariz. Aug. 9, 2013), the minimal benefit Mylan is likely to gain to its current claims in defenses ultimately is outweighed by the risk of encountering privilege and work-product issues, *see Sterne Kessler*, 276 F.R.D. at 384.

Accordingly, the Court grants Petitioner's Motion to Quash, but without prejudice to Mylan reissuing the subpoena if the New Jersey court grants Mylan's Motion to Amend. In that event, Petitioner is not precluded from re-filing a motion to quash.

## CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** Petitioner's Motion to Quash, without prejudice to Mylan issuing another subpoena in the event that the New Jersey court grants Mylan's Motion to Amend.

**IT IS SO ORDERED.**

Dated: November 28, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge